[No. 14580.   Department One.   April 16, 1918.]

ISLAND GUN CLUB, *Respondent*, v. NATIONAL SURETY COMPANY, *Appellant*.[1]

PRINCIPAL AND SURETY — BOND FOR PERFORMANCE OF CONTRACT — CONSTRUCTION. A bond given to secure the faithful performance of a contract to furnish all labor and material for an improvement, guarantees payment of a subcontractor doing work on the job for which the subcontractor had a lien, although the contract did not expressly provide for a bond to secure performance.

SAME—LIABILITY OF SURETY—PERFORMANCE OF CONTRACT—PROTECTION AGAINST LIENS. Where a bond insuring the performance of a contract required the surety to pay out any money which should be paid to it, "for the protection of all parties in interest," the surety is liable for the amount of the contract price which was paid to it upon a dispute arising, and which it paid to the contractor, after notice that a subcontractor had not been paid and had a claim for a lien exceeding the sum paid over.

RECEIVERS—AUTHORITY — ASSIGNMENTS. General receivers of a foreign surety company have, by virtue of their office, authority to assign to persons to whom the surety company is liable the surety company's rights under an indemnity bond protecting it against the liability; the same not being the assignment of assets, but simply a matter of relieving it from the obligation.

SAME — ASSIGNMENTS — EXECUTION. A receivers' assignment of rights under an indemnity bond, in consideration of a release from liability for the same matter, is sufficient, although signed by their individual names, without official designation, where the body of the assignment referred to the receivers as assignors, and recitals made it plain that they intended to execute it in their capacity as receivers.

TRIAL—OBJECTION TO EVIDENCE—SUFFICIENCY. Upon the offer of a receivers' assignment in evidence, an objection to it as "incompetent, irrelevant, and immaterial," is insufficient to raise the point that the signatures of the receivers had not been proved, where the objection was overruled, "unless there is objection to the form in which it was authenticated," and no further objection was made.

ASSIGNMENTS—PROPERTY ASSIGNABLE—RIGHTS UNDER INDEMNITY BOND. The rights of a surety company under an indemnity bond given to secure application of the proceeds of a contract on which the surety company was liable, is assignable to the owners to whom

[1]Reported in 172 Pac. 209.

the surety company was liable, notwithstanding the nonassignability of insurance contracts, in view of the purposes for which the bond was given and that the assignment did not change or affect the liability in any respect.

INDEMNITY—ACTIONS—ACCRUAL—DATE OF LOSS. A right of action upon an indemnity bond given to a surety upon paying over money while the property was subject to a lien, did not accrue until judgment foreclosing the lien, and suit brought thereon within two years is in time.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 29, 1917, upon findings in favor of the plaintiff, in an action upon contract. Affirmed.

*Roberts, Wilson & Skeel,* for appellant.
*E. H. Kohlhase,* for respondent.

PARKER, J.—This is an action upon an indemnity bond, executed by L. C. Hall, doing business as L. C. Hall & Company, as principal, and the National Surety Company, as surety, and given to the United Surety Company to indemnify it against damages which it might suffer from the paying over to Hall of the sum of $985.42, which sum was placed in its hands by the Island Gun Club in pursuance of the terms of an indemnity bond it had executed as surety with Hall as principal to secure the faithful performance of a contract wherein Hall agreed to construct for it certain dikes and drains. Recovery is sought by the gun club upon the theory that it has succeeded to the rights of the United Surety Company under the indemnity bond given to that company by the National Surety Company. Trial upon the merits in the superior court for King county, sitting without a jury, resulted in findings and judgment in favor of the gun club and against L. C. Hall and the National Surety Company in the sum of $985.42, from which the National Surety Company has appealed to this court.

On May 5, 1910, L. C. Hall, doing business in the name of L. C. Hall & Company, entered into a contract with the Island Gun Club by which he agreed to construct certain dikes and drains for it in Skagit county in accordance with certain plans and specifications, for which it agreed to pay him $4,750. The contract contained among other provisions the following:

"Said party of the second part (Hall) shall furnish all skill, labor and material required for the complete performance of said improvement, in its each and every detail."

The contract did not in terms provide for the giving of a bond by Hall as contractor to secure the faithful performance of the work, but on the same day and manifestly in compliance with the understanding of the parties at the time of the signing of the contract Hall executed, as principal, with the United Surety Company, as surety, and delivered to the gun club a bond in the sum of $4,750 to secure the faithful performance of the contract. This bond was conditioned as follows:

"The conditions of the above obligation are such, that whereas the above bounden principal has entered into an agreement with the above named Island Gun Club for the construction and completion of a dike and box drains on section 25, twp. 33 N. R. 3 E. W. M. near the town of Fir, Washington, according to the terms and conditions of a certain contract entered into the fifth day of May, 1910, which contract is hereby referred to and made a part hereof as fully as if written herein.

"Now therefore, if any notice is served upon the obligee, or if the obligee shall have knowledge that the principal is not meeting its obligations for labor performed or material furnished, then and thereafter all payments made or to be made, under the said contract, shall be made through the surety for the protection of all parties in interest, and that if said principal shall

faithfully perform said contract according to the terms, covenants and conditions thereof, then this obligation shall be void; otherwise to remain in full force and effect."

Hall, we assume, completed the work, when there remained unpaid upon the contract price the sum of $985.42. The gun club, having learned that Hall had not settled with the Everett Construction Company, which company had done work for him upon the contract, for which it had a lien upon the land, notified the United Surety Company thereof and paid over to it the balance of $985.42 due upon the contract, to the end that the same might be held and paid out by it "for the protection of all parties in interest" as provided by the terms of the bond. Thereafter, on November 1, 1910, the United Surety Company paid this $985.42 over to Hall upon his demand therefor, but before doing so it exacted of and received from him an indemnity bond in the sum of $985.42, executed by him as principal and the National Surety Company as surety, containing recitals and conditions as follows:

"Whereas, said principal, L. C. Hall & Company, did on the 5th day of May, 1910, enter into a certain contract with the Island Gun Club for the construction of a certain dyke in section 25, township 33 north, range 3 east, W. M. near the town of Fir, Washington, in Skagit county, and

"Whereas, the said principal L. C. Hall & Company, did on the 5th day of May, 1910, give, together with the said United Surety Company, a certain bond, wherein said L. C. Hall & Company was principal and said United Surety Company was surety, said bond being conditioned that said L. C. Hall & Company should faithfully perform said work according to the terms, covenants and conditions thereof, and

"Whereas, said bond contained a clause to the effect that 'if any notice is served upon the obligee or if the obligee shall have knowledge that the principal is not

meeting its obligations for labor performed or material furnished, then and thereafter all payments made or to be made under the said contract shall be made through the surety for the protection of all parties in interest' and

"Whereas, the said obligee did heretofore give notice to the said United Surety Company that there was a certain dispute between said L. C. Hall & Company and the Everett Construction Company, a corporation which had performed certain work for said L. C. Hall & Company under said contract, and

"Whereas, it now appears that said Everett Construction Company has filed a lien against the property of the said Island Gun Club, said lien being based upon a claim for work and labor alleged to have been performed for said L. C. Hall & Company under said contract, and

"Whereas, according to the provisions of said bond between L. C. Hall & Company and said United Surety Company given to the said Island Gun Club the said Island Gun Club has paid over certain moneys to said United Surety Company, and said United Surety Company did have in its possession at the time of the execution of these presents the sum of nine hundred eighty-five and 42-100 dollars ($985.42), being money paid it by said Island Gun Club under the condition hereinbefore set forth, and

"Whereas, the said United Surety Company did pay said sum of nine hundred eighty-five and 42-100 dollars ($985.42) to said L. C. Hall & Company.

"Now Therefore, the condition of this instrument is such that if the said principals shall pay back to said United Surety Company said sum of nine hundred eighty-five and 42-100 dollars ($985.42) or such portion thereof as may be necessary to satisfy any claim or judgment which may be established against said L. C. Hall & Company under its contract aforesaid, either by said Everett Construction Company or any other person or claimant, then this obligation shall be void, otherwise to remain in full force and effect."

Thereafter the lien of the Everett Construction Company against the land of the gun club was fore-

closed in an action in the superior court for Skagit county, in which a decree of foreclosure was rendered accordingly, and on January 23, 1917, the gun club was compelled to and did pay the sum of $2,117.40 in order to free its land from the lien of that judgment and decree. After the execution of the bond here sued upon, the United Surety Company passed into liquidation and into the hands of receivers appointed by the circuit court of Baltimore city, that being its home. Thereafter, on May 18, 1916, the receivers assigned to the gun club all their rights under the bond executed by Hall and the National Surety Company to the United Surety Company and thereafter this action was commenced by the gun club upon that bond.

It is first contended in appellant's behalf that no default rendering it liable upon its bond is shown. The argument seems to be that, since the contract did not in terms provide for the giving of a bond by Hall to secure its faithful performance, and since neither the contract nor the bond given by Hall and the United Surety Company, to secure faithful performance of the contract, provided in terms for the protection of the property of respondent against liens, that, therefore, Hall's failure to settle with the Everett Construction Company, resulting in its lien and the foreclosure thereof against respondent's land, was not a breach of the conditions of the bond given by the United Surety Company; and, there being no breach rendering that company liable upon its bond, it follows that appellant is not liable upon its bond given to the United Surety Company. We may concede that appellant would in no event be liable to respondent upon its bond given to the United Surety Company in the absence of liability of that company to respondent upon its bond. We have noticed that, by the terms of the contract, Hall was to "furnish all skill, labor and

material required for the complete performance of said improvement, in its each and every detail," and that he was to be paid a lump sum as compensation therefor. Manifestly, this means that he was to furnish such labor and material at his own cost and expense, and that he was to see that the cost of such labor and material should not become a burden upon respondent or its property. This, it seems to us, was one of the things for him to do in the faithful performance of his contract and which the bond was given to secure. It is true that the contract did not in terms provide for the giving of the bond to secure its faithful performance, but the bond executed by Hall and the United Surety Company was given to secure the faithful performance of the contract on the same day the contract was signed, and the contract was referred to therein and made part thereof "as fully as if written herein."

We think we are warranted in proceeding upon the assumption that the signing of the contract and the furnishing of the bond in connection therewith was all one transaction as between Hall and respondent. In addition the bond required the United Surety Company to pay out money which should be paid to it instead of to Hall by respondent upon the contract price "for the protection of all parties in interest," manifestly meaning that such money should be held and paid out by the United Surety Company accordingly as the protection of respondent's rights under the contract required. That is, that the money so held by the United Surety Company should be paid out by it towards the satisfaction of claims that might become liens against the respondent's land. We conclude that the United Surety Company was rendered liable upon its bond to respondent in, at least, the sum of $985.42, upon the payment by that company to Hall of that

sum which had been paid to it by respondent and upon the foreclosure of the lien of the Everett Construction Company for a larger amount which respondent was compelled to pay to free its land from that lien. It seems to follow as a matter of course that appellant would be liable to the United Surety Company upon its bond here sued upon in the sum of $985.42, since that bond was executed by appellant and given to the United Surety Company for the express purpose of securing the repayment to it of that sum from Hall, should it eventuate that he was not entitled to receive or retain that sum as against respondent's right to have it applied towards the satisfaction of the lien of the Everett Construction Company. This brings us to the question of the rights of the receivers of the United Surety Company and the rights of respondent as their successors in interest, as against appellant.

It is contended by counsel for appellant that there is a failure of showing of authority on the part of the receivers of the United Surety Company to assign to respondent the right of that company under the bond given it by appellant. While it is true that the certified copy of the proceedings of the Baltimore court here in evidence do not show specific authority in the receivers to make the particular assignment here involved, or general authority on their part to sell the property of the United Surety Company, it seems to us, since the receivers are general receivers of that company and this bond was to secure the repayment of $985.42 paid by it to Hall to the end that respondent's land should be protected as against lien claims arising out of the performance of Hall's contract, that the assignment by the receivers is only a method of adjusting the reciprocal rights and liabilities of the United Surety Company growing out of its bond given to respondent to secure the faithful performance of Hall's

contract and the bond given to it by appellant to secure
the repayment to it of the $985.42 paid to Hall, should
it appear that Hall was not entitled to the money as
against the claims of respondent to have it applied to-
wards the satisfaction of the lien of the Everett Con-
struction Company, or some other possible lien.  This
was not the selling of an asset of the United Surety
Company which might prejudice the rights of the gen-
eral creditors or stockholders of that company, but sim-
ply a matter of relieving the United Surety Company
from the obligations of its bond given to respondent by
the assignment to respondent of the right of that com-
pany in the bond it had received from appellant for the
very purpose of indemnifying itself against its liability
upon the bond it had given to respondent.  Instead of
the United Surety Company's receivers retaining, and
themselves suing appellant upon, the bond as, mani-
festly, they could have done since conditions had oc-
curred entitling that company to have Hall repay the
money to it, the receivers, by their assignment were
simply placing respondent in their shoes, to the end
that he might look to the security which the United
Surety Company had acquired for the purpose of
enabling it to secure repayment of the $985.42 from
Hall for the benefit of respondent.  We are of the
opinion that the receivers, by virtue of their office as
general receivers alone, had authority to make this
assignment.

It is contended that the assignment is so defective in
form that it is not in law an assignment by the re-
ceivers as such.  It contains a number of recitals, re-
ferring to the bond given by the United Surety Com-
pany to respondent to secure the faithful performance
of Hall's contract, referring to the payment by re-
spondent to the United Surety Company of the $985.42

under the terms of that bond, referring to the payment
of that sum to Hall by the United Surety Company
upon Hall's executing the bond with appellant as
surety conditioned for the repayment of that sum to
the United Surety Company should it become neces-
sary, and referring particularly to the claim of the
Everett Construction Company by name as being a
claim which might require the repayment of the money
by Hall, to the end that it might be applied upon such
claim, but mentioning no other possible claim by name.
In the body of the assignment, the receivers are named
as assignors as follows:

"Edwin W. Poe, Stuart S. Janney, Ernest J. Clark
and J. Kemp Bartlett, receivers of the United Surety
Company duly appointed by order of the circuit court
of Baltimore city, hereby and by these presents
transfer . . ."

The consideration for the making of the assignment
is recited as being the release of the United Surety
Company and its receivers from all claim, liability and
demand for, or on account of, the execution of the bond
which that company had executed as surety with Hall
to secure the faithful performance of his contract with
respondent. The assignment is signed by each of these
receivers by their individual names without official
designation.

Counsel call our attention to a number of decisions
wherein signers of money obligations have been held
personally bound thereby though the signers were de-
scribed therein as directors, committees, etc., of some
named association or corporation, there being no other
language indicating that they were acting for the
named association or corporation. An examination of
these decisions and the many others which might be
cited as bearing upon the question of the capacity in
which a person executing a writing acts, we think will

disclose that each case is determinable largely upon its own particular facts, that is, the question becomes one of intent in the light of the language used in the particular writing. Where one signs a money obligation or other writing obligating him to do something, ordinarily the obligation will be deemed personal though he may describe himself in the writing by indicating some position he occupies in some association or corporation, providing he goes no further and does not put in the writing some recitals or statements indicating that he is not acting for himself but for the named association or corporation. This seems to be the rule with reference to money or other obligations to be paid or performed. Now when it comes to the assignment of a right which in no event can be considered other than as personal property by a person who concededly has no personal interest in such property but holds the same in some representative capacity, it seems to us that it should not require as strong and convincing inference to be drawn from the language of the assignment to call for the conclusion that the assignment is made in a representative capacity, as when one executes an instrument for the payment of money or for the doing of some act to be performed in the future. It is plain from the recitals in this assignment that it would have been an idle thing for these receivers to have made it as a mere personal act on their part. As individuals they had absolutely nothing to assign, while as receivers they had all the rights of the United Surety Company in this bond to assign, and the recitals in their assignment, it seems to us, plainly evidence an intent to execute the same in their capacity as receivers and to transfer to respondent all the rights of the United Surety Company under the bond executed by appellant. If the assignment does not mean this, it manifestly means nothing. We conclude, there-

fore, that the receivers did assign in their representative capacity although they did not expressly say they assigned *as* receivers, nor did they sign other than their individual names.

It is also contended that the assignment was not proven by competent evidence because the purported signatures thereto of the receivers were not proven to be the genuine signatures of the receivers. After the introduction in evidence by counsel for respondent of the Hall contract, the bond to secure its faithful performance executed by the United Surety Company, the bond executed by appellant to the United Surety Company to secure the repayment of the money which that company paid to Hall, and copy of the Baltimore court proceedings showing the appointment of the receivers, counsel for respondent offered in evidence the assignment of the receivers purporting to be executed by them in the manner we have already noticed, when counsel for appellant addressed the court as follows: "I object to it as incompetent, irrelevant and immaterial" to which the court replied, "Objection overruled, unless there is objection to the form in which it is authenticated"; the court manifestly referring to the assignment and meaning the authentication of the assignment by acknowledgment or proof of the genuineness of the signatures of the receivers. Counsel for appellant now argue that this had reference to the authentication of the proceedings of the Baltimore city court which had theretofore been received in evidence, but, clearly, we think this position is untenable, for at the time the court so ruled there was nothing for it to rule upon except the question of the receiving in evidence of this assignment. It seems to us, in view of the court's remark to the effect that the objection would be overruled unless it be directed to the authentication of the assignment, and counsel for appellant

making no further objection, they cannot now be heard to say that the receiving of the assignment in evidence was error for want of proof of the genuineness of the signatures of the receivers. Had they insisted upon an objection in that particular manifestly counsel for respondent would have insisted upon and been granted an opportunity to supply proof of the genuineness of the signatures. We think this was in effect a waiver of the necessity of such proof. *Murray v. Seattle,* 96 Wash. 646, 165 Pac. 895.

It is further contended that the bond is not assignable. It is argued that this is so because it is in substance an insurance contract and contains no words or recitals affirmatively showing that it was intended by the parties thereto to be assignable. Counsel invoke the general rule that contracts of insurance are not assignable in the absence therein of language expressly or by plain implication indicating such to be the intent of the parties. We think, however, that the indemnity bond here sued upon while, in a sense, an insurance contract, does not come within the rule invoked: This bond was given by appellant to United Surety Company for the express purpose of securing the repayment to it of the $985 which it paid out to Hall while it was holding that money "for the protection of all parties interested," under the terms of the bond it had given to respondent; and, manifestly, while both appellant and the United Surety Company fully realized that, if the money was required to be repaid to the United Surety Company, it would be because of the foreclosure of the lien of the Everett Construction Company upon respondent's land, or because of some other possible claim of lien that might menace the title of respondent to its land. In other words, the bond was an asset of the United Surety Company acquired

by it for the express purpose of applying the proceeds thereof either to the payment of any liability it might incur on its bond to respondent or to the reimbursing of itself for any sums it might be compelled to pay on such liability. It may be that there was not such privity of contract between respondent and appellant as would entitle respondent to sue appellant upon the bond it gave to the United Surety Company, without an assignment. We think, however, that the rights of the United Surety Company under the bond given to it by appellant were assignable to respondent in view of the purpose for which that bond was given. The assignment did not change the liability of appellant upon its bond in the least, nor did it impair appellant's ability or opportunity to defend any action which might be brought thereon by respondent. It is in no worse position in this regard than as if the receivers of the United Surety Company were themselves suing upon the bond. The question of the assignability of a bond obligation somewhat like that here involved was learnedly. reviewed by the Sixth Federal Circuit Court of Appeals, in *American Bonding & Trust Co. v. Baltimore & O. S. W. R. Co.*, 124 Fed. 866, and a conclusion reached in harmony with this view.

Some contention is made in behalf of appellant that the cause of action here sued upon is barred by the statute of limitations. The cause of action accrued not earlier than April, 1915, when the judgment and decree of foreclosure of the Everett Construction Company's lien upon respondent's land was rendered. This action was commenced in February, 1917, within less than two years thereafter. This we think is a sufficient answer to the contention that the action was barred by the statute of limitations at the time of its commencement. Some other contentions have been made in appellant's behalf. We have not overlooked them,

but believe they are disposed of, in so far as they merit discussion, by what we have already said.

The judgment is affirmed.

ELLIS, C. J., FULLERTON, MAIN, and WEBSTER, JJ., concur.