**Elmer Freiner, Appellee, v. William Oscar Lane et al., Appellants.**

Opinion filed November 8, 1939.

JOE CRAIN, of Mound City, and WILBOURN & GILLES-PIE, of Cairo, for appellants.

DEWEY & CUMMINS, of Cairo, for appellee.

Mr. Presiding Justice Stone delivered the opinion of the court.

A chronological statement of the transactions out of which this litigation grows seems necessary to a proper understanding of the questions presented.

On January 21, 1929, William Oscar Lane and Georgia Anna Lane were indebted to Holly C. Marchildon in the sum of $10,425 and in evidence thereof executed their note for that amount payable to said Marchildon, due five years after date with interest at 6 per cent, together with five interest notes, each in the amount of $625.50, and to secure the payment of these notes the Lanes on the same day executed, acknowledged and delivered to Marchildon a mortgage conveying 360 acres of land in Alexander county, Illinois.

On March 2, 1929, Holly C. Marchildon purchased 350 shares of stock of the Universal Life Insurance Company at $30 a share and transferred the Lane notes and some cash in payment for the same. It does not appear that he ever executed an assignment of the mortgage, although it does appear that the notes, indorsed by Marchildon "without recourse," and the mortgage were delivered to Universal Life Insurance Company. During the year 1929 Marchildon attended a meeting of the insurance company in St. Louis and was elected a director.

On December 31, 1930, the Universal Life Insurance Company consolidated and merged with the First National Life Insurance Company of America, and on August 18, 1931, all of the property and assets of the First National Life Insurance Company of America were purchased by Mississippi Valley Life Insurance Company, and the Lane notes and mortgage were among the assets so purchased.

From May 2, 1929, to September 27, 1932, the Lane notes and mortgage were on deposit with the superintendent of insurance of the State of Missouri. On

April 28, 1932, Joseph B. Thompson, superintendent of insurance of the State of Missouri, and William E. Caulfield, of St. Louis, Missouri, were appointed receivers of the Mississippi Valley Life Insurance Company.

On December 21, 1933, the circuit court of St. Louis, which had jurisdiction of this receivership, authorized the receivers to indorse, assign and deliver the Lane notes and mortgage to C. B. Meredith upon payment of $850 and the assumption of taxes in the amount of $1,130 due on the Alexander county land covered by said mortgage. In accordance with this court order the notes and mortgage were delivered to C. B. Meredith and an assignment of the mortgage was executed in the name of Mississippi Valley Life Insurance Company, R. E. O'Malley and William E. Caulfield, receivers, and William E. Caulfield. Apparently William E. Caulfield executed the same in the name of the insurance company and both receivers.

No payments were ever made on said notes except two small payments in 1930 and one small payment in 1931, aggregating $139.98, which were applied to the interest due on said notes.

On September 10, 1932, C. A. Marchildon, son of Holly C. Marchildon, was appointed by the circuit court of Alexander county, Illinois, receiver of the business of Holly C. Marchildon and appears to have taken a personal and active interest in the transactions hereinafter set out.

On February 10, 1934, Mr. Meredith went to the office of H. C. Marchildon, in Thebes, Illinois, and the latter learned that Mr. Meredith had bought the notes and mortgage.

On the same day C. A. Marchildon had a conversation with the Lanes and they agreed to give a deed to the farm in consideration of a release of the mortgage and a lease of the farm for one year. The Lanes there-

upon executed a deed conveying the land to Emma L. Marchildon, wife of Holly C. Marchildon and mother of C. A. Marchildon, and the grantee executed a lease of the farm land to the Lanes for the period of one year.

On the same day Holly C. Marchildon executed a release of the mortgage and these documents were filed for record on February 10, 1934.

On February 13, 1934, C. A. Marchildon negotiated a sale of this land to Kenneth R. Spillman for consideration of $1,000. The grantee paid $100 cash and "was to pay the balance as he got it."

On January 5, 1935, C. B. Meredith sold and assigned the Lane notes and mortgage to Elmer Freiner foi $1,050 and on the 8th of January, 1935, the assignment of the notes and mortgage from the receiver to Meredith and the assignment from Meredith to Freiner were filed for record in Alexander county.

On June 22, 1935, the assignee Elmer Freiner brought this suit in the circuit court of Alexander county to foreclose the mortgage given by the Lanes to Holly C. Marchildon and to set aside the release executed by H. C. Marchildon. He made William Oscar Lane, Georgia Anna Lane, Holly C. Marchildon, Emma L. Marchildon and Kenneth R. Spillman defendants.

The defendant H. C. Marchildon answered denying that he transferred the notes to the Universal Life Insurance Company for a valuable consideration and alleging that the assignments were without any consideration and were for worthless stock and that the assignments were procured by the unlawful contrivances and fraudulent misrepresentations of the agents of the Universal Insurance Company; that a short time thereafter the company was placed in the hands of a receiver and at the time of the alleged assignments the stock had no value and for that reason the alleged

assignments were without consideration, fraudulent and void. The defendant Spillman made a similar answer and in addition alleged that he purchased the property in good faith without notice and for a valuable consideration. He further alleged that the plaintiff, knowing that the mortgage was not assigned of record, is guilty of laches in delaying his prosecution of his purported claim. Later, on July 30, 1937, H. C. Marchildon amended his answer and alleged further that the sale of the stock of the insurance company to him was void because in violation of the Illinois Securities Law and tendered the stock into court. The plaintiff replied, pleading that the defense alleged in the defendant's answer was barred by laches and the statute of limitation. The master took proofs and filed them, but did not make any findings or recommendations and the cause was heard by the court on the proofs.

The court found the equities in favor of the plaintiff, but found also that the defendant Spillman has an equitable interest in the premises to the extent of $100 which the plaintiff had consented and agreed to pay to said defendant, and a decree of foreclosure and sale was entered.

Defendants H. C. Marchildon and K. R. Spillman have appealed from this decree and they rely upon the following errors for a reversal:

1. The trial court erred in not dismissing plaintiff's bill for foreclosure for want of equity.

2. The trial court erred in holding the plaintiff was entitled to foreclosure of his mortgage after the lands described therein had been transferred to the defendant Spillman, who was a bona fide purchaser without notice.

3. The trial court erred in holding the plaintiff was the holder in due course without notice of the mortgage and notes involved in this suit.

4. The trial court erred in not holding the consideration failed for the sale of said stock to Holly C. Marchildon by the Universal Life Insurance Company, and that he had not elected to rescind said sale within five years after it was consummated.

5. The trial court erred in not holding the sale of the stock and the transfer of the mortgage and notes was in violation of the Illinois Securities Law and therefore void at the election of Holly C. Marchildon.

6. The trial court erred in not holding that when Elmer Freiner, the plaintiff, purchased the notes and mortgage, having both constructive and actual notice that the property covered by said mortgage was transferred to K. R. Spillman, said purchase of the mortgage and notes was void as against public policy.

The defense of H. C. Marchildon is founded upon the claim that the transfer of the Lane notes and mortgage by him to the Universal Life Insurance Company was voidable because the notes were assigned as consideration for the purchase of stock in the Universal Life Insurance Company at a time when such stock was not qualified under the Illinois Securities Law for sale in Illinois, and that he therefore had the right to rescind the same and thus regain title to the notes and mortgage; that he did rescind prior to February 10, 1934, and that therefore he had the right to release the mortgage as he did on February 10, 1934.

Mr. Marchildon claims that he elected to rescind the transfer of the notes and mortgage to the insurance company three or four months before he executed the release.

The evidence discloses that Marchildon started a suit on January 2, 1934, against the Lanes, who were the makers of the notes and mortgage, and C. B. Meredith, the then holder of the notes. Apparently this suit was settled by the Lanes by giving a deed conveying the premises to Emma L. Marchildon, wife of H. C.

Marchildon, and by the execution of the release of the mortgage by H. C. Marchildon. Although C. B. Meredith was a party to this suit, there is no proof that he was served with process.

There is no proof that H. C. Marchildon ever did anything further to effectuate his alleged election to rescind the purchase of the insurance company's stock until he filed his amended answer in the case now under consideration on July 30, 1937. There is no proof that any notice of an election to rescind was ever given to the insurance company or to the plaintiff herein or to his predecessors in title prior to the filing of the amended answer in 1937. "As a general rule an affirmative act on the part of a person desiring to rescind is necessary, it being necessary also that notice of such intention be given to the adverse party." 13 C. J. 618.

The amended answer, setting up as a defense to the foreclosure proceedings that the transfer of the notes in exchange for stock in the insurance company was voidable because of the failure of the insurance company to qualify its stock under the Illinois Securities Law, was filed more than five years after the consummation of the purchase of the stock. We believe the claim of Mr. Marchildon that his purchase of the stock was voidable as in violation of the Illinois Securities Law was barred by the terms of the act itself, which provides: "All prosecutions and all civil actions to recover money or for other purposes under this Act, or based upon any provision of this Act must be commenced within five years after the commission of the act complained of." [Illinois Rev. Stat. 1937, ch. 121½, § 135] Jones Ill. Stats. Ann. 13.51; *Hoffman v. Gillett*, 250 Ill. App. 492; *Lipcovitz v. Warren Printing Co.*, 249 Ill. App. 368.

H. C. Marchildon was made a party to this complaint to foreclose and the relief demanded of him was that

the release deed from him to the Lanes be set aside and decreed null and void as against the plaintiff. In this suit by an assignee of notes and mortgage against the makers to foreclose the mortgage and against the original mortgagee to cancel a release executed by him after he had assigned the notes and mortgage, the original mortgagee injects the claim that his assignment of the notes was voidable because the consideration therefor was the purchase of stock which was sold in violation of the Illinois Securities Law. The plaintiff here purchased the notes in question after maturity and therefore took them subject to existing equities between the maker and the payee, but he should not be charged with equities existing betwen intermediate indorsers. It is well-settled that latent equities between intermediate parties cannot be set up as against a purchaser after maturity. *Wolford v. Rusk,* 145 Ill. App. 405; *Silverman v. Bullock,* 98 Ill. 11.

The assignee of a mortgage takes it subject only to equities existing in favor of the mortgagor as against the assignee and not subject to latent equities in favor of third persons in the subject involved in the assignment of which he had no notice. *Silverman v. Bullock,* 98 Ill. 11; *Himrod v. Gilman,* 147 Ill. 293; *Humble v. Curtis,* 160 Ill. 193; *Millikin Trust Co. v. Gregory,* 292 Ill. App. 28.

The equities here involved did not exist in favor of the Lanes, the mortgagors, but are claimed by the original mortgagee, Marchildon, against his assignee, Universal Life Insurance Company. The language used in *Millikin Trust Co. v. Gregory, supra,* is appropriate: ''The equities here involved did not exist in favor of the mortgagor as against the assignor, and for that reason the assignee of the notes and trust deed was not bound to inquire of third persons whether they had any equities, and is presumed to take without notice of any such equities and free from them.''

We believe that plaintiff here should not be deprived of his right to foreclose by reason of any equities in favor of the mortgagee and against the plaintiff's remote assignor. At the time of the attempted release by Marchildon he had assigned his interest in the notes and mortgage and had not regained title or ownership in any legal way. As to plaintiff the release of the mortgage by Marchildon is ineffective and should be set aside.

It is claimed that plaintiff did not acquire good title to the notes and mortgage because the assignment by the receivers of the insurance company was not executed and acknowledged by both receivers. It appears that the assignment in question was made pursuant to an order of a court having jurisdiction of the matter and that it was executed by one of the receivers in the name of the insurance company and both receivers, and the acknowledgment was of the one receiver who signed it and apparently was of his individual rather than his official signature. It has been held that a receiver's assignment signed by the individual names of the receivers without official designation is not defective as not being an assignment by receivers as such. (*Island Gun Club v. National Surety Co.*, 101 Wash. 185.) This would be true especially where the assignment is made pursuant to authority of a court having jurisdiction. It appears that the assignment was made to the person and at the price ordered by the court. The assignment was sufficiently executed.

Plaintiff was found to have agreed to pay K. R. Spillman the $100 which the latter had paid down on the purchase price of the land. That would be equitable and under our view of the evidence and the law Spillman would not be entitled to more relief than being made whole. We hold that the release of the mortgage by Marchildon, the deed from the Lanes to Emma Marchildon, and the deed from the latter to Spillman

were all fraudulent as against the rights of the plaintiff. It is not insisted that Spillman participated in any actual fraud and he, therefore, should be reimbursed.

We have considered other questions raised, but are of the opinion that the points we have discussed are decisive of all the issues. The decree of the chancellor seems to be just and correct and the same is affirmed.

*Decree affirmed.*