## Edna W. Hoffman, Appellee, v. Charles W. Gillett, Appellant.

### Gen. No. 32,873.

Opinion filed December 19, 1928. Rehearing denied January 2, 1929.

BRUNDAGE, LANDON & HOLT, for appellant; PERRY B. BRELIN and FLOYD E. BRITTON, of counsel.

ALBERT SABATH and CHARLES HUDSON, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

The statement of claim charges that plaintiff Edna W. Hoffman, on or about the 11th day of August, 1922, paid to the defendant Charles W. Gillett $500 for 50 shares of Class A stock of a corporation known as The Turbulator Corporation, upon the representations by the defendant, through his duly authorized agent, that said stock would be listed on the stock exchange within a period of 90 days, or the money of the plaintiff would be refunded. Plaintiff charges that the said stock was never listed and although she has made repeated demands the defendant has failed to return said money. To this statement of claim the defendant filed his affidavit of merits and the cause proceeded to trial before the court, without a jury.

During the course of the trial counsel for the plaintiff asked leave to amend her statement of claim by

setting out therein the fact that said stock was not duly qualified under the Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.,* and, thereupon, the cause was continued for two days and leave granted plaintiff to file an amended statement of claim and defendant given three days thereafter to answer. A sworn amended statement of claim was filed by the plaintiff March 9, 1928, charging that plaintiff's claim was for the sum of $500, the same being the amount paid by the plaintiff for 50 shares of stock of The Turbulator Corporation and which was signed by the defendant, as president; charges further that at the time said sale was made it was represented to the plaintiff by the agent of the defendant and of said corporation that said stock was Class A stock and would be within 90 days listed upon the New York Stock Exchange; charges further that said stock when delivered to the plaintiff was a temporary certificate and bore the words printed thereon, "Class A," and that at the time of said sale one Carswell, the agent and salesman of the defendant and of The Turbulator Corporation, and on behalf of the defendant as his agent, promised that if said stock was not listed, as aforesaid, the defendant would buy back said stock from the plaintiff and return to her the $500.

The amended statement of claim further charges that said stock was not "Class A" stock and was not listed on the New York Exchange and was fraudulent and void under the laws of the State of Illinois; that said stock was, at most, "Class D" stock and the defendant and his agent Carswell, and the corporation of which the defendant was president, did not, as required by law, place on the certificates the words: "Securities in Class D under the Illinois Securities Law." The amended statement of claim charges that the plaintiff now elects to void said purchase or sale to her and demands that the defendant as seller, and as an officer and director of The Turbulator Corpora-

tion, shall repay the amount given for said stock with plaintiff's reasonable attorneys' fees. Plaintiff further tenders back said stock in open court.

The defendant filed his answer to said statement of claim denying that the stock was purchased from the defendant and denies that Carswell was his agent and denies that he promised to repurchase said stock within 90 days. Defendant further asserts that said stock was qualified as Class D stock under the Securities Law of the State of Illinois, Cahill's St. ch. 32, ¶ 254 *et seq.*, and charges further that the statute of limitations had run against the filing of said claim. Substantially all of the testimony on behalf of the plaintiff had been heard by the court prior to the continuance of the cause for the purpose of permitting plaintiff to file her amended statement of claim. A witness by the name of Lloyd Taylor testified on behalf of the plaintiff that in June, 1924, he went with her to the defendant's office and there met Gillett and that the plaintiff said to Gillett that Mr. Carswell had stated that he would take the stock off her hands and that he replied, "My agent hasn't any authority to tell me what I should do, for right now I am tied up but later on I will try and take it off your hands."

The plaintiff testified on her own behalf that Carswell came to her house and told her that if the stock was not listed within 90 days, Gillett would take it off her hands; that on January 13, 1925, she wrote a letter to Mr. Gillett stating that she had been waiting to hear from him since her call at his office concerning the 50 shares of stock; that Mr. Carswell knew all about the matter and had assured her that Gillett would take it off her hands if it was not on the market within 90 days. This letter was introduced in evidence. To this communication a letter was received signed by the secretary of the defendant, acknowledging receipt of the letter. Plaintiff testified that she looked at the stock exchange reports from time to time, but never

found the stock quoted. A letter from counsel for plaintiff, addressed to defendant, was introduced in evidence dated March 17, 1925, in which said counsel sought to have some adjustment made of the claim. In answer to this communication a letter was received from one O'Brien, stating that this communication, addressed to Mr. Gillett, under date of March 17th, had been referred to him and that if plaintiff desired to dispose of her stock she would have to resell it to some one else, as the corporation did not have the power to deal in its own securities. Both the mother and the brother of the plaintiff testified to the effect that Carswell stated that Mr. Gillett had sent him out to call upon the plaintiff and that if she purchased the stock, Gillett would take it off her hands if it was not listed on the stock exchange within 90 days.

The defendant on his own behalf denied the agency of Carswell and stated that if he was selling stock it was on behalf of the corporation and not as the agent of the defendant. He stated further that Carswell was working on a salary and commission basis for The Turbulator Corporation and that he, the defendant, never received any money from Mrs. Hoffman, nor any person on her behalf. He testified further that he did not receive the $500 in question nor any other moneys from Mr. Carswell and denied that O'Brien represented him as his lawyer or counsel in answering the communication of the attorney for the plaintiff dated March 17, 1925.

The defendant offered in evidence a certificate from the secretary of State, showing that The Turbulator Corporation on May 10, 1922, had filed statements and documents seeking qualifications as Class D securities to the amount of 40,000 shares of Class A stock. The defendant offered in evidence the subscription agreement of the plaintiff to 50 shares of Class A capital stock of The Turbulator Corporation, dated August 11, 1922. This subsequent agreement contained the follow-

ing provision: "No representations or agreements, verbal or written other than herein contained, will be accepted by the corporation. No salesman has authority to sign, or endorse the name of this corporation. Make checks, drafts and money orders payable to The Turbulator Corporation."

The subscription agreement bears the signature, as witness, of James Carswell, salesman. The defendant introduced in evidence a receipt made out and delivered at the time of the purchase which acknowledged the receipt of $500 in full payment of subscription to the stock of The Turbulator Corporation. The receipt was signed, "The Turbulator Corporation, by James Carswell." The plaintiff admits having received this receipt at the time of the purchase. The court found for the plaintiff in the sum of $500 and entered judgment upon the finding and from this judgment this appeal was perfected to this court.

The cause of action of the plaintiff rests upon the amended statement of claim filed March 9, 1928. The direct charge is to the effect that the sale of the stock was fraudulent and void because of the fact that it did not contain the words on the face thereof, "Securities in Class D under the Illinois Securities Law." The plaintiff thereupon elected by said amended statement of claim to void said purchase or sale and demanded a repayment of the money given as a consideration for said stock, together with her attorneys' fees, and tendered the stock back in open court to the seller.

The Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.*, provides for the recovery of attorneys' fees in the event the stock does not comply with the act and suit is brought thereon to recover the purchase price. Moreover, it is apparent that plaintiff did not rely upon the original statement of claim based upon the promise of the defendant, by his agent Carswell, that he would repurchase the stock if it was not listed within 90 days. We do not consider it necessary to discuss the question

as to whether in fact Carswell was the agent, as, under the view we take of this proceeding, it becomes unnecessary.

The recovery of the purchase price, the tender of the stock in open court, the application for attorneys' fees and the demand that the transaction be declared null and void, indicate but one thing, namely, that the action is predicated upon a violation of the Securities Act of the State of Illinois. Such being the case, it is clear that the claim was outlawed by the statute of limitations. The stock was purchased August 11, 1922. The amended statement of claim was filed March 9, 1928, over five years after the date of the purchase. There is no force in the contention that the period does not begin to run until after the election of the plaintiff to return the stock. If such were the case, the tolling of the statute could be continued indefinitely. Moreover, the position of the plaintiff, that defendant was liable because he had promised and agreed to repurchase the stock if it was not listed within 90 days after the date of purchase, is untenable. The facts show that the purchase was made August 11, 1922, and, giving every favorable intendment to the testimony of the plaintiff, it appears that the first demand upon the defendant was made in June, 1924, nearly two years after the alleged purchase from Gillett. Suit was not commenced on said claim until June 15, 1925.

From plaintiff's own testimony it is apparent that she examined the lists of the stock exchange for the purpose of finding out whether said stock was listed and found that it was not. After the expiration of 90 days she was placed upon notice and was obligated to demand of the defendant that he fulfil his obligation. The law gave her a reasonable time within which to do this, but it required of her that she exercise this right within that period of time. Having waited over a year and a half to make her demand and nearly three years before starting suit, we are of the opinion that

that right was not exercised within such period of time as the law could say was reasonable. *Ide v. Brody,* 156 Ill. App. 479.

For the reasons stated in this opinion the judgment of the municipal court is reversed and judgment will be entered here in favor of the defendant.

*Judgment reversed and judgment here.*

HOLDOM, P. J., and RYNER, J., concur.