In re Estate of Mary E. Coleman, Deceased.
Mary Jean Barnes and Cornelia W. Barnes, Guardian of Donald Barnes, Minor, Appellants, v. Nathan G. Coleman, Appellee.

Gen. No. 42,510.

Heard in the second division of this court for the first district at the October term, 1942. Opinion filed February 10, 1944. Rehearing denied March 9, 1944.

MULCAHY, MURPHY & WALSH, of Chicago, for appellants; MICHAEL F. MULCAHY, HENRY W. DIERINGER and WILLIAM T. MURPHY, all of Chicago, of counsel.

JOHN F. DIFFENDERFFER, JR., of Chicago, for appellee; HARRY L. HEER, of Galena, and GUSTAV E. BEERLY, JR., of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This appeal by Mary Jean Barnes and Cornelia W. Barnes, guardian of Donald Barnes, a minor, seeks to reverse an order of the probate court of Cook county which denied a petition filed in that court by the executor of the estate of Mary E. Coleman, deceased, to sell real estate belonging to said estate to pay legacies bequeathed to Donald Barnes and Mary Jean Barnes under the will of said Mary E. Coleman. The appeal was perfected to the Supreme Court of this State which ordered it transferred to this court. A partial

distribution of $750 was made to each of the Barnes children to apply on their legacies.

Mary E. Coleman died November 10, 1934 and her will, dated February 5, 1926, was admitted to probate in the probate court of Cook county January 10, 1935. The provisions of her will pertinent to this inquiry are as follows:

"I hereby give, devise and bequeath to Donald Barnes and Mary Jean Barnes of Phoenix, Oregon, if he or she shall survive me, the sum of Two Thousand Dollars ($2,000.00) each to be paid within one year after my decease, in due course of administration.

"All the rest and residue of my estate, real personal and mixed and wheresoever situated, I devise and bequeath to my brother, Nathan G. Coleman, of Galena, Illinois, for his absolute use and benefit."

Nathan G. Coleman, named in the will as executor, qualified as such. At the time of the testator's death Donald Barnes and Mary Jean Barnes were 14 and 13 years old respectively and resided with their mother, Cornelia W. Barnes, in Oregon. The assets of the estate inventoried and accounted for by the executor consisted of about $2,600 in personal property and an undivided one-half interest in a farm in Joe Daviess county, Illinois. On or about July 23, 1938, at which time both Donald and Mary Jean Barnes were still minors, their mother, Cornelia W. Barnes, by leave of court filed a petition as their guardian in which she alleged in substance that the personal property in the testator's estate was insufficient to pay the pecuniary legacies bequeathed to her minor children; that said legacies were a charge on the real estate devised to the residuary legatee; and that it was necessary to sell said real estate in order to pay her childrens' legacies. The petition prayed that the executor be required to file a petition for the sale of the real estate.

The executor's answer to said petition admitted that the personal property was insufficient to pay the money legacies in full and then alleged that same were

not a charge on the real estate and that if there was a deficiency in the personal estate to pay said legacies in full they must to that extent abate.

Upon a hearing an order was entered by the probate court on January 27, 1939, which found that the testator Mary E. Coleman intended to charge the real estate in her estate with the payment of said legacies, that "there is insufficient personal property in the estate to pay the legacies in full after the payment of debts" and that "it is necessary that the real estate be sold to pay the said legacies in full"; and adjudged that the executor "be and he is hereby ordered and required to file his petition in this Court within twenty days from this date for the sale of the said real estate, and that he be and he is hereby ordered and required to sell the same and pay the said legacies in full, within a reasonable time after the filing of said petition." (Hereinafter for convenience the proceeding which resulted in the foregoing order will be sometimes referred to as the first proceeding.) Thereafter on or about October 7, 1940 the executor filed a petition for a direction to sell the real estate to pay the legacies to Donald Barnes and Mary Jean Barnes as required by the order of January 27, 1939 and asked in said petition that the Barnes children, their mother as their guardian and Nathan G. Coleman, individually as the residuary devisees of said real estate, be made parties defendant and that summonses issue for them.

Mary Jean Barnes, having attained her majority, and Cornelia W. Barnes, guardian of Donald Barnes (hereinafter for convenience sometimes referred to collectively as the Barnes), filed a joint answer admitting the allegations of the executor's petition and joined in the prayer thereof that said executor be directed to sell the real estate to pay the legacies in question.

Nathan G. Coleman filed an answer individually as residuary devisee, in which he denied that the legacies to the Barnes children were a proper charge against

the real estate or that same should be sold to pay said legacies and averred that at the time the testator executed her will she was possessed of more than sufficient personal assets to pay said legacies in full and that it was her intention that same were to be paid solely from her personal estate.

When the executor's petition to sell the real estate was called for hearing, an oral motion was interposed on behalf of the Barnes that the order entered in the first proceeding in which the sole issue presented was whether the executor *be required to file a petition to sell* the real estate, was *res adjudicata* of the issue presented by the executor's petition *to sell*.

Upon the hearing on the executor's petition to sell and the answers thereto it was shown by the undisputed evidence of Attorney Gustav E. Beerly that at the time the testator executed her will she owned personal property exceeding $15,000 in value. It also appeared that the farm land devised by the testator had been in her family since 1840, that she was born on it and that her brother, the residuary devisee, who was 74 years old, was also born on it, spending his entire life on said farm with the exception of 6 years.

Veda N. Berkman testified on behalf of the Barnes that she lived in Bend, Oregon, in 1905, and was acquainted with the testator, Mary E. Coleman, who was librarian for said city at that time; that she knew Cornelia W. Barnes, the mother of the Barnes children; that Cornelia W. Barnes was a very intimate friend of the testator's; that Cornelia W. Barnes' mother was the testator's assistant in the library at Bend, Oregon; that the testator lived with Cornelia W. Barnes and her mother part of the time prior to the former's marriage and lived with Judge ELLIS BARNES, the father of the Barnes children, part of the time; that the testator introduced Cornelia W. Barnes (then Cornelia Wilson) to Judge BARNES; that they were married thereafter and that Donald and Mary Jean

Barnes were born of said marriage; that the testator was not related to the Barnes children but was their godmother and very devoted to them; and that she last saw the testator in 1925 or 1926, at which time the latter told her that "she was devoted to the Barnes children and was going to see to it that they got a good education."

At the conclusion of the hearing on said petition of the executor to sell, an order was entered March 6, 1942, which found and adjudged as follows: -

"That on or about the 5th day of February, 1926, the date upon which the said will of Mary E. Coleman was executed, that Mary E. Coleman was possessed of a personal estate in excess of $15,000.

"The Court further finds that considering the testatrix's surroundings and circumstances and the state and condition of her family and property at the time the will was executed showing that the testatrix owned personal property of a value much greater than would be required to pay debts, costs of administration and pecuniary legacies, and that the only realty involved in the estate is the farm which has been occupied by Nathan G. Coleman since the year 1893 and has been owned by the family of Nathan G. Coleman and Mary E. Coleman for more than one hundred years and was at the time of the execution of the will of Mary E. Coleman owned by Mary E. Coleman, the testatrix, and her brother, Nathan G. Coleman.

"The Court is of the opinion and finds that a true interpretation of the will of Mary E. Coleman, deceased, considered in the light of the testatrix's surroundings and the circumstances and the state and condition of her family and property at the time the will was executed is such that would indicate that the testatrix did not intend to make the legacies to Donald Barnes and Mary Jean Barnes (strangers to the blood) a charge upon the real estate devised in the residuary clause to her brother, Nathan G. Coleman.

Counsel for Cornelia W. Barnes, guardian for Donald Barnes and Mary Jean Barnes, minors, having moved for judgment on the grounds that this matter is *res adjudicata* by order entered in this Court on January 27, 1939, and the Court having heard arguments and read briefs: Doth order that said motion is overruled.

"IT IS, THEREFORE, ORDERED that the executor shall satisfy in so far as the personal estate in his hands will provide the said payment of the said legacies to the said Donald Barnes and Mary Jean Barnes, and that if a deficiency exists in the personal estate to pay said legacies in full that the legacies to that extent shall abate.

"IT IS, THEREFORE, ORDERED that the petition to sell real estate to pay the legacies of Donald Barnes and Mary Jean Barnes be and the same is hereby dismissed."

It is from this order that the appeal is prosecuted. (The proceeding which resulted in the foregoing order will sometimes hereinafter for convenience be referred to as the second proceeding.)

The first question presented is whether, since the real estate was not expressly charged in the will with the payment of the money legacies, it can be said from the language of the entire will, considered in the light of the testator's surroundings and circumstances and the state and condition of her family and property at the time her will was executed, that the testator, Mary E. Coleman, impliedly intended to charge her real estate with the payment of such legacies. The trial court found that she did not and it is not claimed that the evidence was insufficient to support such finding. The judgment order of the trial court, including the findings therein, is in conformity with the principles of law enunciated by the Supreme Court in *Alderman v. Dystrup,* 293 Ill. 504. The will in that case provided

for pecuniary legacies to the testator's daughters and by a subsequent residuary clause he devised and bequeathed all his property, real, personal, and mixed, to his son, who was also named executor and qualified as such. At the time of the death of the testator therein the personal property in his estate was insufficient to pay the money legacies in full and it was sought as here to charge the real estate with the payment of same. The Appellate Court had affirmed the decree of the circuit court, which interpreted the will in that case to mean that the pecuniary legacies were not to be charged against the real estate devised under the residuary clause and ordered that such legacies abate pro rata to the extent of the deficiency of the personal estate to pay them in full. There, in determining the appeal from the Appellate Court, which as already stated had affirmed the decree of the circuit court, the Supreme Court said at p. 508:

"It is not claimed by plaintiff in error that the real estate was expressly charged with the payment of the money legacies, but it is claimed such intention is necessarily inferred from the residuary clause of the will, which gave the son of the testator 'all the balance' of his property. There is no inflexible rule that where money legacies are bequeathed generally and the residue of the estate is given to another, the money legacies are a charge on the residuary estate. In such cases the question to be determined is, What did the testator intend? And this is to be determined from the language of the entire will, considered in the light of the testator's surroundings and circumstances and the state and condition of his family and property at the time the will was executed. (*Wallace v. Foxwell*, 250 Ill. 616; *Nixon v. Nixon*, 268 id. 524; *Strickland v. Strickland*, 271 id. 614.) Evidence introduced at the hearing showed that at the time the will was executed the testator owned personal property of a value much greater than would be required to pay debts, costs of

administration and pecuniary legacies. Subsequently the personal estate was reduced. . . . There is nothing in the language of the will to indicate that the testator intended the money legacies to be a charge on the residuary estate. . . . Considering the whole will together, it seems clear the testator did not intend the daughters should have any claim on the real estate devised to his son. This construction is further strengthened when the testator's circumstances and property at the time he executed the will are considered.''

This case is so squarely in point both on the facts and the exact question under consideration that further discussion relative to such question would serve no useful purpose.

The only other question that need be considered is whether the determination by the trial court by its order of January 27, 1939 of the issues presented by the petition of Cornelia W. Barnes, as guardian of Donald Barnes and Mary Jean Barnes, *to require the executor to file a petition* to sell the real estate to pay the money legacies was *res adjudicata* as against the parties brought before the court and as to the issues involved in the proceeding instituted by the executor by filing *his petition to sell* such real estate.

Appellants insist that, because in passing upon their petition to require the executor to file a petition to sell the real estate, the trial court in its order of January 27, 1939 found that the testator ''intended to charge the real estate in her estate with the payment of said legacies'' and in addition to ordering the executor ''to file his petition in this court within twenty . . . days from this date for the sale of the said real estate,'' also ordered said executor ''to sell the same and pay the said legacies in full, within a reasonable time after the filing of said petition,'' the court was precluded from considering or determining in the subsequent proceeding, wherein the executor filed his petition to sell the real estate as directed by the order

of January 27, 1939, the question as to whether the real estate should be sold to pay the money legacies.

In *Charles E. Harding Co. v. Harding,* 352 Ill. 417, in defining the doctrine of *res adjudicata* and the principle of estoppel by verdict, the court said at pp. 426 and 427:

"The doctrine of *res judicata* is, that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except as the judgment or decree may be brought before a court of appellate jurisdiction for review in the manner provided by law. A judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them. The doctrine extends not only to the questions actually decided but to all grounds of recovery or defense which might have been presented. . . . Where the former adjudication is relied on as an absolute bar to a subsequent action, it must be shown that the cause of action, the thing to be recovered and the parties are the same in both proceedings. The principle of *res judicata* applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the determination in the former suit of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the later suit, regardless of the identity of the cause of action, or the lack of it in the two suits. When the second action between the same parties is upon a different cause of action, claim or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other

matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action, the burden of proof is on him who invokes the estoppel, and extrinsic and parol evidence is admissible to prove that the precise question in the second case was raised and determined in the first. . . . This principle is sometimes called estoppel by verdict, and the estoppel is equally available to either party, the plaintiff in support of his action or the defendant of his defense, when the circumstances warrant it. Whether the adjudication relied on as an estoppel goes to a single question or all the questions involved in the case, the fundamental principle upon which it is allowed is that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated in a court of competent jurisdiction shall be deemed finally and conclusively settled in any subsequent litigation between the same parties where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication.''

Under the situation presented here the doctrine of *res adjudicata* cannot be successfully invoked by appellants against the defense urged and relied upon by Coleman as residuary devisee in the second proceeding. Although the cause of action in both proceedings involved the claimed right of appellants to have the real estate sold to pay the money legacies, the relief sought in the first proceeding was *a direction to the executor to file a petition to sell the real estate,* while in the second proceeding the relief sought was the *actual sale of the real estate.* The only issue in the first proceeding was whether the executor should be required to file a petition to sell and the issue in the second proceeding was whether the real estate should be ordered sold. It is insisted by Coleman as residuary

devisee that the parties were not the same in the two proceedings, that the only proper and necessary party respondent to the petition filed by appellants in the first proceeding was the executor, against whom said appellants sought a direction in the trial court to file a petition to sell the real estate and that in the second proceeding it was necessary to make Coleman individually a party because of his interest in the real estate as residuary devisee. It is urged by appellants that Coleman as executor and Coleman as residuary devisee should be considered as one and the same person for the purpose of these proceedings, since in the first proceeding that resulted in the order against Coleman as executor, he was afforded full opportunity as personal representative to protect his rights as successor to the realty. Even if the law in this respect were as appellants contend, it could only be applicable here if the order entered in the first proceeding was a final order. It is unnecessary to consider or determine the contentions of the parties in this regard, since, as will hereinafter be shown, the order entered in the first proceeding was not and could not be a final determination of appellants' claimed right to have the real estate sold to pay the money legacies. Even though it be assumed that the cause of action and the parties were the same in both proceedings, still the doctrine of *res adjudicata* could not be properly invoked as a bar to the defense of Coleman individually as residuary devisee in the second proceeding, since, as already shown, "the thing to be recovered" or the relief sought was not the same in both proceedings.

If it be assumed that the parties were the same in both proceedings and that the executor was afforded full opportunity in the first proceeding as personal representative to protect his rights as successor to the real estate, it might seem at first blush that the principle of estoppel by verdict was properly invoked as a bar to the defense of Coleman as residuary legatee

in the second proceeding. The real question at issue and determined in the first proceeding was whether the testator intended to charge the real estate in her estate with the payment of the money legacies and the same question was at issue and had to be determined in the second proceeding. Necessarily there had to be a finding as to the intention of the testator to charge her real estate with the payment of the money legacies to support the order in the first proceeding requiring the executor to file a petition to sell the real estate just as there had to be a similar finding in the second proceeding to support an order for the sale of the real estate on the executor's petition to sell same. It will be remembered that the principle of estoppel by verdict applies even though the cause of action or the relief sought are not the same in both proceedings.

Notwithstanding the apparent applicability of the principle of estoppel by verdict as a bar to the defense of Coleman as residuary devisee in the second proceeding, the fact that the order entered in the first proceeding was not and could not be a final order constitutes an insurmountable obstacle to the application of such principle to said defense. The only relief sought in the first proceeding, as has already been pointed out, was simply an order directing an initiatory or preliminary step in a proceeding in which a final order would subsequently be entered. (*McCollister v. Greene County Nat. Bank,* 171 Ill. 608.) The only responsive order that could properly have been entered in the first proceeding was in its very nature interlocutory and not appealable. It is only a final determination, which is appealable, of the issue or issues involved in a proceeding that can be invoked by way of *res adjudicata* or estoppel by verdict as a bar to a subsequent proceeding between the same parties. That only an appealable final judgment or order is conclusive as to a subsequent proceeding is the established law of this State.

In *McCollister v. Greene County Nat. Bank, supra,* a petition was filed by a claimant, whose claim was allowed against the estate involved therein, to require the administrator of said estate to inventory certain lands as the property of the decedent and to file a petition for a decree and order of sale of said land. The county court denied the prayer of the petition but on appeal to the circuit court an order was entered remanding the cause with directions to require the administrator to inventory the land in said estate and to petition the court for an order authorizing the sale of said land to pay the claims. In dismissing an appeal filed therein by the administrator from the order of the circuit court, the Supreme Court said at p. 611:

"The judgment or order appealed from is not a final order, but simply an order directing an initiatory step, necessary to bring before the county court a cause for disposition in that court, should be taken. In its nature it is not unlike an order entered granting leave to file an information, or an intervening petition, or a cross-bill, or giving leave to prosecute as a poor person, or an order citing an administrator to appear and file a report or show cause, etc. As against the petitioner the order of the county court denying the application for the order against the administrator was a final, appealable order. It disposed of the subject matter of the controversy finally, unless reversed, hence the petitioner had the right to appeal to the circuit court. Had the petition been granted by the county court it would have been in no sense final, but only preliminary, and as but a step in a proceeding in which a final order would subsequently be entered. The order or judgment of the circuit court was but a preliminary—not a final—order."

(To the same effect are *Lane v. Thorn,* 103 Ill. App. 215; *VanSellar v. James,* 113 Ill. App. 206; *Wotowa v. Rockey,* 229 Ill. App. 273.)

The same judge tried both proceedings. When the doctrine of *res adjudicata* was invoked in the second proceeding, he realized that the first proceeding was merely preliminary or initiatory and that the only order that he should have entered therein responsive to the prayer of appellants' petition and determinative of the only issue raised by the pleadings was that requiring the executor to file a petition to sell the real estate and that his inclusion in the order entered in the first proceeding of a direction to the executor to sell the real estate and pay the money legacies in full was improper. Therefore the inclusion in the order entered in the first proceeding of the direction to the executor to sell the real estate and pay the money legacies in full was mere surplusage.

We are impelled to hold that the order appealed from dismissing the executor's petition to sell the real estate was properly entered and said order of the probate court is therefore affirmed.

*Order affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.