**NORTHERN TRUST CO. et al. v. ESSA-NESS THEATRES CORP. et al.**

**STERN v. ESSANESS THEATRES CORP. et al.**

Nos. 50 C 1750, 50 C 1762.

United States District Court,
N. D. Illinois, E. D.
Jan. 29, 1952.

Bell, Boyd, Marshall & Lloyd, Chicago, Ill., for Northern Trust Co., et al.

Rosenberg, Stein & Rosenberg, Chicago, Ill., for Emil Stern.

Edward Blackman, Chicago, Ill., for Essaness and Silverman.

Roger S. Foster, General Counsel, Alexander Cohen, Special Counsel, and James R. Jones, all of Washington, D. C., for Securities and Exchange Commission, amicus curiae.

LA BUY, District Judge.

The above matters have been consolidated for the purposes of defendants' motions setting up grounds for dismissal and summary judgment which are applicable to both complaints.

The plaintiffs have filed separate complaints alleging an action arising under the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C.A. § 78j(b). It is alleged that pursuant to an agreement of October 20, 1945 the defendant corporation through its president and director, Edwin Silverman, purchased from plaintiff executors and Emil Stern 290 and 250 shares of capital stock, respectively, of Essaness Theatres Corporation out of a total capital stock of 915 shares, for the sum of $540,000 and $583,000 respectively; that said sale was made by the plaintiffs in reliance on certain statements and representations made by defendants with respect to the assets and business of the defendant corporation; that in connection with said sale and purchase defendants "employed and made use of means and instrumentalities of interstate commerce and the United States mails" and "employed in connection with said purchase manipulative and deceptive devices and contrivances in contravention of the rules and regulations prescribed by the Securities and Exchange Commission"; that at the time of the negotiations defendants "were without plaintiffs' knowledge carrying on active negotiations with other persons for the

acquisition by defendant, Essaness Theatres Corporation, or a substantial interest in a large and important theatre business in Chicago carried on under the name of the Oriental Theatre * * * for the management of said Oriental Theatre business by Essaness Theatres Corporation on terms very favorable to said corporation" and on December 17, 1945 at the time the purchase was consummated the defendant corporation had an equitable interest in the Oriental Theatre and in the corporation which was to own and operate said business; that it was the duty of the defendants to disclose the aforesaid negotiations to avoid a fraud and deceit upon the plaintiffs, said facts having a material bearing on the value of the shares purchased; that at the time of the purchase the defendants had consummated the negotiations in connection with the Oriental Theatre and acquired an interest having an estimated value of $100,000 to $250,000 and received $500,000 by way of fees, commissions and profits therefrom; that in consequence of defendants' failure to perform its duty plaintiffs are entitled to an accounting and to recover from the defendants the difference between the fair value of said shares and the price received for them, such difference being estimated at not less than $636,000 and $500,-000 respectively.

In 1944, at the time of Spiegel's death, the officers, directors and stockholders of defendant corporation were as follows:

Edwin Silverman, President, director and owner of 375 shares of stock;

Emil Stern, Vice-president, director and owner of 250 shares of stock;

Sidney M. Spiegel, Jr., Secretary and treasurer, director and owner of 375 shares of stock.

Morris Glasser, the certified public accountant of the defendant corporation was elected as a director upon the death of Spiegel and is also one of the executors of his estate.

The defendants, Essaness Theatres Corporation and Edwin Silverman, have filed motions to dismiss the complaints with prejudice, or in the alternative for a judgment in favor of the defendants, or to make the complaints more certain, and support said motions by numerous affidavits and exhibits. This motion by leave of court is now being presented as a motion for summary judgment on the ground there are no genuine issues of fact to be determined.

The grounds for the motions can be classified into four main divisions: (1) that the affidavits and exhibits show a full and complete disclosure to plaintiffs of the possible management of the Oriental Theatre; (2) that as a matter of law since the value of the theatre stock was passed upon by the Probate Court of Cook County on November 15, 1945, the plaintiffs are barred from maintaining this action by this prior adjudication; (3) that the Securities Exchange Act of 1934 does not give this court jurisdiction since (a) the present transaction did not involve a security traded on a securities exchange or an "over-the-counter" market, (b) there was no use of the United States mails or means or instrumentalities of interstate commerce in connection with the purchase of said stock, (c) the Act does not provide a civil right of action, and (d) Section 9(e) of the 1934 Act and Section 29(b) thereof, 15 U.S.C.A. §§ 78i(e), 78cc(b), bar said action by expiration of time; and (4) the action is barred by the Illinois Statute of Limitations, Smith-Hurd Ann.Stats., Chapter 83, Section 16. Other grounds are urged but these are the principal contentions. Plaintiffs have objected to said motion and move to strike certain portions thereof.

As to the first ground of the defendants' motion, the court is of the opinion that it presents genuine controversial issues of fact, which if the action is proper, go to the merits of the suits. It is not the function of a court on a motion for summary judgment to resolve factual issues, but only to determine whether a controversy as to the facts exists between the parties.

The defense of res judicata has been raised with respect to the proceedings in the Probate Court in connection with the Estate of Sidney M. Spiegel, Jr.

958

This doctrine embodies two main rules: (1) the judgment or decree of a court of competent jurisdiction on the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal, and (2) any right, fact, or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether or not the claim or demand, purpose or subject matter of the two suits is the same.

The Probate Court proceedings and the present suit, while they allegedly stem from the same sales of stock, are based upon different causes of action. The Probate Court concerned itself with the contract by the estate to sell its shares of stock and not with the question of whether the defendants were guilty of a fraud. Causes of action which are distinct and independent although growing out of the same contract, transaction or state of facts may be sued upon separately and the recovery of a judgment will not bar subsequent actions. 34 C.J. p. 847; 50 C.J.S., Judgment, § 674.

In order to apply the principle of judicial estoppel two requisites must be present, (1) identity of parties, that is, the party sought to be bound should be a party to both actions, and must have appeared in both in the same character or capacity; and (2) identity of issues, that is, a fact or question which was in issue in a former suit and was there judicially passed on and determined is conclusively settled by the judgment therein and it is immaterial that the question alleged to have been settled by such former adjudication was determined in a different kind of proceeding or a different form of action or for different purposes.

As to identity of parties the defendants assert that neither Essaness nor its president were parties to the Probate Court proceedings. The action of the Probate Court arose in the Estate of Sidney M. Spiegel, Jr. in connection with an offer of October 20, 1945, made by Essaness Theatres Corporation through its president to the executors of the Estate who were the Northern Trust Company, Kathryn Spiegel and Morris Glasser. The Court approved the sale of the estate shares for a price at which they were subsequently sold. It is not denied that the record in the Probate Court shows appearances on behalf of the executors of the Estate, Essaness Theatres Corporation, minor defendants, and Mr. Stern. So far as Emil Stern is concerned it is apparent his appearance was as a stockholder of the corporation and not as a seller of his shares of stock. The decree entered in the Probate Court would not foreclose his rights as a seller of his own shares from bringing any action for rights accruing to him thereunder. It is not clear in what status Edwin Silverman is made a party defendant in the present suit, but from the allegations of the complaint it appears his joinder is on the basis of his status as president of corporate defendant, the same position in which he executed the offer of October 20, 1945 for the corporate defendant forming the basis of the contract of sale which the Probate Court considered, and it appears that the executors and the corporate defendant acted in the same capacity in the Probate Court as purchaser and seller as they do here.

The rule is often stated in general terms that a judgment is conclusive not only upon the questions actually contested and determined but upon all matters which might have been litigated and decided in that suit. However, there is a refinement in the rule of judicial estoppel which makes such a generalization inapplicable. As was stated in Cromwell v. County of Sac, 1876, 94 U.S. 351, 352, 24 L.Ed. 195:

"* * * there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former

case, the judgment if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. * * *"

Baldwin v. Hanecy, 1903, 204 Ill. 281, 288, 68 N.E. 560; In re Estate of Coleman, 1944, 321 Ill.App. 552, 561, 53 N.E.2d 329.

The alleged fraud existent here was not disclosed in the Probate Court and therefore could not have been adjudicated there.

■ From the foregoing statements of the rule, it appears that where different causes of action are involved, as here, the doctrine of res judicata is limited to issues actually adjudicated. The issue of fraud not having been adjudicated, plaintiff executors are not barred from asserting it here.

The court comes next to the contention that the allegations of the complaints do not establish that a violation of the Securities Exchange Act occurred. The litigants and the Securities & Exchange Commission, as amicus curiae, have dealt extensively and thoroughly with the question of the application and interpretation of the provisions of the Act. The statutory section involved is Section 10(b), 15 U.S.C.A. § 78j(b), which reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— * * *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

The pertinent rule promulgated by the Commission is Rule X–10B–5 which reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange,

"(a) To employ any device, scheme or artifice to defraud;

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

"in connection with the purchase or sale of any security."

It is urged by the defendants that the application of Section 10(b) is limited to securities which are traded on a securities exchange or on an "over-the-counter" market. It is conceded by the parties that the present stock was not registered on a securities exchange. Defendants have exhaustively surveyed the legislative and committee discussions with regard to the term "over-the-counter" and rely upon the definition that "over-the-counter" market refers to a "market maintained off a regular exchange by one or more dealers or

brokers" which market "must be maintained both for the purchase and sale of the securities in question."

■ It is a rule that where a statute is susceptible on its face of two constructions, the court may look into prior and contemporaneous acts, the reasons which induced the act in question, mischiefs intended to be remedied, and extraneous circumstances and purpose intended to be accomplished thereby, but where the statute is clear upon its face, and standing alone, is fairly susceptible of one construction, that construction must be given thereto. Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers, D.C.Va.1944, 53 F.Supp. 935, certiorari denied 322 U.S. 756, 64 S.Ct. 1267, 88 L.Ed. 1585, reversed 4 Cir., 145 F.2d 10, affirmed 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534.

The term under controversy on this point is "any security." Several cases have been cited to support the contention that there is no limitation intended upon these words, and defendant claims that (with the exception of Robinson v. Difford, D.C.Pa. 1950, 92 F.Supp. 145) there are no cases considering this question.

The facts briefly summarized in the Difford case are that plaintiff and another as executors of the Estate of John Robinson sued the defendant individually and as agents for the Robinson Plywood and Timber Company to recover damages for alleged misrepresentations causing plaintiffs to sell their minority stock in the corporation to defendant majority stockholders for substantially less than the true value thereof. The court overruled defendants' motion to dismiss the complaint and held it had jurisdiction of the action. The court, 92 F.Supp. at page 147, said:

"Defendants' first argument for the dismissal of the complaint is that the Securities Exchange Act does not apply where, as in the present case, the securities in question were neither registered on a national exchange nor traded in the over-the-counter market. Clearly this argument is without foundation. The Act says, Sec. 10(b) * * * Rule X–10B–5 of the Commission, which was 'prescribed' by the Commission pursuant to the power given to it by this section of the Act is: * * *.

"The Act applies both to securities registered on a national securities exchange and to 'any security not so registered'. Rule X–10B–5 clearly makes the acts set forth in the complaint unlawful. Consequently, the Act applies to the present case even though the securities involved were not registered on a securities exchange and were never traded in the over-the-counter market. * * * However, defendants vigorously contend that the limited purpose of the Act was to regulate only transactions in securities registered on a national exchange or traded in the over-the-counter market, and not to regulate private transactions. In support of this contention they point to the preamble statement (section 2, 15 U.S. C.A. § 78b) of the general purpose of the Act and to statements made by members of Congress when the Act was under consideration therein. Without deciding that these statements do show such a limited purpose as is contended by defendants, this court must reject defendants' contention, because section 10(b) itself, under which the present action was brought, is unambiguous. Reliance on the preamble statement of section 2 in order to alter the plain and unambiguous provisions of section 10(b) would violate a basic canon of statutory construction that statements in a preamble may be referred to only for the purpose of clarifying an ambiguity in a statutory provision. (Cases cited in footnote.) Likewise, the legislative history of an act may not properly be considered in construing an unambiguous statutory provision such as section 10(b). There are no other sections of the Act which indicate that Congress intended to limit the application of the Act to transactions involving either registered securities or unregistered securities traded in the over-the-counter market."

In Kardon v. National Gypsum Co., D.C. Pa.1947, 73 F.Supp. 798, the issue was not specially crystallized, but from the facts set forth by the court it involved a private transaction. The facts are that plaintiffs and defendant Slavin owned all the capital stock of Western Board and Paper Co. and Michigan Paper Stock Co., its affiliate. Plaintiffs and defendants were officers and together constituted the entire board of directors of Western. The defendant Slavin had agreed for Western to sell to National Gypsum the plant and equipment of Western. The Slavins purchased all the stock of the Kardons in the two corporations and the Kardons knew nothing whatever about the negotiations with National Gypsum. Having acquired the Kardon's stock, the Slavins consummated the transaction with National Gypsum and a formal contract of sale was entered into. The court said: "In essence, the transaction is a sale by directors, in their own interest, of corporate assets, otherwise than in the course of business and without disclosure to stockholders".

Holding contrary to the Difford case, is Fratt v. Robinson, D.C.Wash., July 31, 1951, No. 2765 which is unreported. The SEC has explained the circumstances surrounding the case as follows:

"The Fratt case was an aftermath of the Robinson v. Difford case. One of the allegedly defrauded stockholders who had not been a party to the earlier lawsuit brought action against the same defendants. A motion to dismiss, setting forth several legal defenses in addition to the instant one, was heard by Judge McLaughlin, a visiting judge from Hawaii. We are advised that, after completion of oral argument, Judge McLaughlin stated from the bench that he was in sympathy with the defendants' position as to the intended scope of the Act, that he disagreed with Judge Grim's opinion in the Robinson v. Difford case, and that he would sign an order dismissing the action. He did not indicate that he would file any opinion."

An order of dismissal was entered August 6, 1951.

■ The Securities and Exchange Commission has consistently taken the view that the suggested limitation of the scope of the 1934 Act is inapplicable. The opinions of administrative agencies relating to interpretations of statutes are generally entitled to great weight. Roland Elec. Co. v. Walling, 1945, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383, and U. S. v. American Trucking Ass'ns, Inc., 1939, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345.

■ Words are given their ordinary meaning and reference to legislative purpose and background are to be resorted to only where doubt exists as to their meaning in that they are ambiguous and capable of more than one meaning. This court is of the opinion the statutory section and rule here involved are clear. For this reason, the court rejects the construction insisted upon by the defendants and holds that the securities here involved are within the purview of the protective coverage of Section 10(b) and Rule X–10B–5.

■ The next argument raised under the Act is that the business of defendant is entirely intrastate and further that no instrumentalities of interstate commerce or use of the mails was used in conveying the alleged misrepresentation. In support of the inapplicability of the Act to intrastate transactions, the defendants have set forth fully legislative discussion in connection with the passage of the Act wherein concern was expressed by legislators that Section 15, 15 U.S.C.A. § 78o, the over-the-counter markets section, applied to "minor sales of capital structures for purely local industrial institutions" and said section was amended to provide for the exemption of localized securities from the over-the-counter provisions of the Act. Section 15 deals with brokers or dealers, requiring registration and information and reports.

There are no facts concerning the operation of defendants' enterprise to determine whether they are operating intrastate or interstate, but in any event this argument of the defendants must be considered.

The same remarks with reference to legislative history and background are pertinent here. No limitation appears in Section 10(b) in its application to "any person".

Section 78c(a) (9), 15 U.S.C.A., defines "person" as follows:

"The term 'person' means an individual, a corporation, a partnership, an association, a joint-stock company, a business trust, or an unincorporated organization."

And, in defining the term "exempted security" the 1934 Act, 15 U.S.C.A. § 78c (a) (12) states it shall include

"such other securities (which *may include,* among others, *unregistered securities, the market in which is predominantly intrastate)* as the Commission may, * * *, exempt from the operation of any one or more provisions of this chapter which by their terms do not apply to an 'exempted security' or to 'exempted securities.'"

No case directly construing Section 10(b) in this respect appears and the parties have resorted, on other points as well as this one, to a construction of the 1933 Act, 15 U.S.C.A. § 77a et seq., and the 1934 Act together since they are conceded to be in pari materia. It is asserted section 10(b) is patterned after Section 17(a) of the Securities Exchange Act of 1933. In this connection the case of Holmes v. United States, 8 Cir., 1943, 134 F.2d 125, 135, is quoted as follows:

"Defendant contends that his business was intrastate, being confined to Nebraska and, hence, the Securities Act of 1933 is not applicable. This Act forbids any person to employ a scheme or artifice to defraud in the sale of securities by the use of the mails or of transportation in interstate commerce. Article I, § 8, cl. 7 of the Constitution vests Congress with power to establish postoffices and postroads. It may, therefore, with propriety exclude matters from the mail that are in furtherance of a fraudulent scheme."

In SEC v. Timetrust, Inc., D.C.Cal.1939, 28 F.Supp. 34, 40, the court held that "by the use of the mails" or "any means or instruments of transportation or communication in interstate commerce" could each separately give rise to charges of statutory violation, and said

"* * * It clearly shows that Congress intended that the provisions of the Act should apply to both interstate and intrastate transactions."

The court is of the opinion no limitation to interstate business is here applicable.

With respect to the argument that there was no misrepresentation in writing which was sent through the mails by defendant, paragraph 8 of the complaint alleges:

"In negotiating and consummating the purchase of said 290.2843 shares of stock pursuant to the agreement of October 20, 1945 (Exhibit X), and carrying out the corporate action and other steps required under the terms of said contract, defendants used or caused to be used the means and instrumentalities of interstate commerce and the United States mails contrary to the statute and rules hereinabove referred to."

Defendants urge that no misrepresentation or misstatements could constitute a fraud after the execution of the agreement of October 20, 1945; the alleged fraud either occurred at or prior to the time of execution of the agreement of October 20, 1945, which matters constituting the fraud were submitted in writing by defendants to plaintiffs through the United States mail, or were submitted orally by defendants to plaintiffs by use of instrumentalities of interstate commerce; otherwise no fraud occurred; that therefore this court has no jurisdiction in that the alleged fraud, if any, was completed and there was no use of the mails or instrumentalities of commerce in the making of the alleged fraud. Plaintiffs urge that it is sufficient under the language of Section 10(b) and Rule X-10B-5 if the mails or facilities of interstate commerce are used in connection with the purchase or sale and that it is not necessary that the misleading statements be communicated by the use of these instrumentalities.

Both litigants refer to sections of the 1933 Act which the courts have interpreted. Defendants contend that this Circuit has held the misrepresentation must be made through the use of the mails or instrumentalities of commerce. In Kemper v. Lohnes, 7 Cir., 1949, 173 F.2d 44 in a civil proceeding brought under Section 12 of the Securities Exchange Act of 1933, the question for decision was whether a cause of action was stated under Section 12(2) in the absence of an allegation that the misrepresentations relied on for recovery were transmitted by use of the mails. Section 12(2), so far as material, provides that any person who

"* * * sells a security * * * by the use of any means or instruments . of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements * * * shall be liable to the person purchasing such security from him * * *."

The court held [173 F.2d 46]:

"In our judgment, the alleged misrepresentations which were made by means of 'oral communication' were not made 'by the use * * * of the mails' and, therefore, no cause of action was stated."

Plaintiffs urge that the comparable section of the 1933 Act is Section 17(a) since the verbiage is substantially that used in Section 10(b).

Section 17(a) is as follows:

"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

In U. S. v. Riedel, 7 Cir., 1942, 126 F.2d 81, 82, the court said as follows:

"More serious is the question raised by defendant that the scheme to defraud was completed when the second necessary step, to-wit, the use of the mails in furtherance of said scheme, occurred. In short, it is defendant's contention that the mails were not used *in furtherance* of the scheme to defraud. While denying that there was a scheme to defraud, he also argues that, as a matter of law, it (the scheme to defraud) must have been over before the letters or cards were mailed, and, therefore, the mailing was not *in furtherance* of the scheme to defraud.

"The ruling on this contention turns on a study of the facts. If the scheme to defraud were over, or had been abandoned, there could be no use of the mails *in furtherance* of it. The words 'in furtherance of' as applied to the scheme may be established only when the scheme is still in existence.

"We are satisfied, however, that the evidence shows, and rather clearly, that the scheme was not over. A scheme to defraud may well include later efforts to avoid detection of the fraud. A fraudulent scheme would hardly be undertaken, save for profit to the plotters. Avoidance of detection and prevention of recovery of money lost by the victims are within, and often a material part of, the illegal scheme. Further profit from the scheme to defraud, as such, may be over, and yet the scheme itself be not ended."

In United States v. Monjar, 3 Cir., 1944, 147 F.2d 916, 920, 921, in dealing with the contention that the indictment alleged no violation of the Securities Act because no use of the mails or telegraph was stated which induced a purchase of a security or

964

use of those facilities in the delivery of a security, the court said:

" * * * In Kopald-Quinn & Co. v. United States, 5 Cir., 101 F.2d 628, certiorari denied Ricebaum v. United States, 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511, it was charged that the scheme of the defendants was to unload worthless stocks on their customers and not as they pretended, to serve their customers by helping them make money. The selling was done by verbal contract and negotiation. The only use of the mails had to do with written confirmations of sales. The defendants stressed, as here, that there was no use of the mails to effect sales and that the use of the mails proven was consequent upon and after the making of a sale and merely incidental. It was also contended that to constitute an offense under the Securities Act it was necessary to prove a scheme to effect sales and the actual making of sales of securities by mail. The court said (101 F.2d page 632): 'We think the construction thus urged for the Act unduly narrows the language used in it, unduly limits its scope and effect. We think the count alleges an offense under the Act, and that the proof supports the allegation.'

"In Pace v. U. S., 5 Cir., 94 F.2d 591, letter expressing thanks for orders for stock given to defendant's salesman were held to sufficiently charge offenses under the Securities Act. The demurrer was overruled in that case. In Landay v. United States, 6 Cir., 108 F.2d 698, which concerned another offense under Section 17 (a)(1) of the Securities Act, the only mailing alleged was of a letter acknowledging receipt of an order to purchase and a check received in payment for the security. The conviction was there upheld. * * *"

The purpose of Section 17(a) of the 1933 Act and Section 10(b) of the 1934 Act are similar and the phraseology employed is substantially similar. The court is of the opinion the comparable guide to be followed is the construction of the courts with respect to 17(a) and not 12(2). For this reason, the court holds that Section 10(b) does not apply solely to interstate business and does not require that misrepresentations or omissions be made through instrumentalities of commerce or through the use of the mails.

With respect to the argument that Section 10(b) does not provide for civil action, it appears that several of the cases have already passed upon this question. See Robinson v. Difford, supra; Speed v. Transamerica Corporation, D.C.Del. 1947, 71 F.Supp. 457; Kardon v. National Gypsum Co., D.C.Pa. 1946, 69 F.Supp. 512; Fischman v. Raytheon, 2 Cir., 1951, 188 F.2d 783; Osborne v. Mallory, D.C.N.Y. 1949, 86 F.Supp. 869, 879. Without unduly lengthening this memorandum by consideration of the defendants contentions, the court is of the opinion Section 10(b) authorizes the remedy here pursued.

The last contention relates to the defense of the Statute of Limitations. Defendants assert that Section 9(e), 15 U.S. C.A. § 78i(e), limiting time of the action to within three years after the violation is applicable. This section reads:

"Sec. 9 Manipulation of security prices * * *

"(e) Any person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction, and the person so injured may sue in law or in equity in any court of competent jurisdiction to recover the damages sustained as a result of any such act or transaction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant. Every person who becomes liable to make any payment under this subsection may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable

to make the same payment. *No action shall be maintained to enforce any liability created under this section,* unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation."

It is apparent that Section 9(e) applies only to enforce a liability in dealing with securities registered for trading, since Sections 9(a) and (c) make unlawful certain transactions or acts involving a security registered on a national securities exchange only and Section 9(b) makes unlawful certain transactions or acts involving the use of any facility of a national securities exchange. It is therefore not to be applied in the instant case.

█ Section 29, 15 U.S.C.A. 78cc, relating to validity of contracts provides:

"(b) Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation: *Provided,* (A) That no contract shall be void by reason of this subsection because of any violation of any rule or regulation prescribed pursuant to paragraph (2) or (3) of subsection (c) of section 78o of this title, and (b) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any

person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation."

As originally enacted the proviso clause was not included. On June 25, 1938 Congress passed a law amending subsection (b) of Section 29 by inserting the proviso clause now there contained which included the limitation provision. 52 Stats. 1076. The court is of the opinion the limitation is applicable to brokers or dealers transactions and the transaction in the instant case is not alleged to have been so affected.

█ It has been held that actions pursuant to Section 10(b) are governed by the statute of limitations of the forum. Osborne v. Mallory, D.C.N.Y. 1949, 86 F. Supp. 869; Fischman v. Raytheon Manufacturing Co., supra.

In Hoskins Coal & Dock Corp. v. Truax Traer Coal Co. & United Electric Coal Companies, 7 Cir., 191 F.2d 912, 913 this court said:

"Congress has enacted no statute of limitations governing private actions for treble damages under the Clayton Act. Consequently, to ascertain the applicable limitation, we must look to the statutes of the state where the cause of action arises and in which suit is brought, Chattanooga Foundry & Pipe Works, v. City of Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241, and, in determining which of several provisions of the state statute will control, we are bound by the interpretations of those statutes by the courts of the State. Dibble v. Bellingham Bay Land Co., 163 U.S. 63, 16 S.Ct. 939, 41 L.Ed. 72; Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 469, 37 L.Ed. 316; Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133. In Bauserman v. Blunt, supra, the court quoted with approval this lan-

guage from Leffingwell v. Warren, **2** Black, 599, 603, 17 L.Ed. 261: 'The courts of the United States, in the absence of legislation upon the subject by congress, recognize the statutes of limitations of the several states, and give them the same construction and effect which are given by the local tribunals. * * * The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text.' "

The applicable section of the Illinois law to the present cause of action is either Section 16, Ch. 83, Smith Hurd Ann.Stats., which has been held to govern actions originating in fraud. McNeil v. Bulkley, 1932, 269 Ill.App. 1, Milwaukee Commercial Bank v. Bennett, 1928, 249 Ill.App. 456 and provides:

"Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property, or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

or, Section 23, Ch. 83, Smith Hurd Ann. Stats., which provides:

"If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

 It appears that the contracts with the Spiegel Estate and with Stern were entered into with Essaness approximately November 1, 1945 when they were executed by the parties, although dated October 20, 1945. The Probate Court approved the Spiegel contract on November 15, 1945. The executors filed their suit December 14, 1950 and Stern filed his suit December 15, 1950. Defendants urge that

the bar of the statute began to run from the date the alleged fraudulent inducement was made to enter into the contract, which was November 1 and therefor each suit was filed approximately one and one-half months more than five years after the Probate Court approved the contracts. It is the contention that the Illinois statute begins to run when the fraud is successfully consummated, not when it is discovered. Plaintiffs, on the other hand contend the statute did not begin to run until December 17, 1945 when the shares were transferred to Essaness. In any event it is their theory that the Illinois statute does not begin to run until the fraud has been discovered or could reasonably have been discovered. The complaint in paragraph 5 alleges that the fact of negotiation with Oriental was "unknown to the plaintiffs when the sale was made" and paragraph 6 alleges:

"In breach of said duty and in furtherance of defendants' manipulative and deceptive device or contrivance contravening said rules, defendants concealed the fact of such negotiations and such acquisition and failed to disclose them to plaintiffs. * * * "

In support of the construction of the statute submitted defendants cite Hoffman v. Gillett, 1928, 250 Ill.App. 492, 498:

"The recovery of the purchase price the tender of the stock in open court, the application for attorneys' fees and the demand that the transaction be declared null and void, indicate but one thing, namely that the action is predicated upon a violation of the Securities Act of the State of Illinois. Such being the case, it is clear that the claim was outlawed by the statute of limitations. The stock was purchased August 11, 1922. The amended statement of claim was filed March 9, 1928, over five years after the date of the purchase. There is no force in the contention that the period does not begin to run until after the election of the plaintiff to return the stock. If such were the case, the tolling of the statute could be continued indefinitely."

However, the court further said:

"From plaintiff's own testimony it is apparent that she examined the lists of the stock exchange for the purpose of finding out whether said stock was listed and found it was not. After the expiration of 90 days she was placed upon notice and was obligated to demand of the defendant that he fulfil his obligation. The law gave her a reasonable time within which to do this, but it required of her that she exercise this right within that period of time. Having waited over a year and a half to make her demand and nearly three years before starting suit, we are of the opinion that that right was not exercised within such period of time as the law could say was reasonable.

Ide v. Brody, 156 Ill.App. 479."

In Jackson v. Anderson, 1934, 355 Ill. 550, 189 N.E. 924, 927, the court held a stockholder's failure to learn of existence of their cause of action for issuance of corporate stock for property sold to corporation until a year prior to filing of bill did not prevent running of limitations, in absence of allegation and proof of fraudulent concealment. But the court went further and said:

"There is no showing of any reason why the complainants could not have learned in 1926 of the facts which they claimed to have learned in 1931. There is no showing of any diligence to learn such facts, * * *."

Fraudulent concealment requires affirmative acts and mere silence of the defendant and failure on the part of the plaintiff to learn of a cause of action do not amount to fraudulent concealment. Jackson v. Anderson, supra, 355 Ill. at page 557, 189 N.E. 924. In Skrodzki v. Sherman State Bank, 1932, 348 Ill. 403, 181 N.E. 325, 327, the court said:

"In Lancaster v. Springer, 239 Ill. 472, 88 N.E. 272, 275, this section (Sec. 26) was construed as follows: 'The concealment of a cause of action which will prevent the operation of the statute of limitations must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. * * Such concealment must consist of affirmative acts or representations,' (citing cases). In Keithley v. Mutual Life Ins. Co. 271 Ill. 584, 111 N.E. 503, this court considered that section. It was there held that mere silence by the person liable is not concealment of a cause of action, but that such concealment must consist of affirmative acts or representations. It was there also held that fraudulent misrepresentations which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of proof of acts or representations tending fraudulently to conceal the cause of action, and that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it. * * *"

This court cannot determine, as a matter of law from a scrutiny of the pleadings and other matters on file, whether the bar of the statute applies. The complaint pleads concealment and plaintiffs must prove such allegation. For this reason the motion is overruled at this time without prejudice to alleging the defense by answer and reasserting the same after a hearing of the evidence in this cause.

The question has also been raised that the complaint does not allege the nature of the statements and representations made, whether they were oral or written, and in what manner they were made. The court is of the opinion that plaintiff should set forth more specifically the acts relating thereto.

Inasmuch as the court has overruled the motion for summary judgment, there is no necessity at this time to rule upon plaintiffs' objections to certain of the exhibits and affidavits submitted in support of the defendants' motion.

In resolving the motion for summary judgment against the defendant, the court has been asked and deems it advisable to designate and define the issues of fact which are to be tried. The first issue to be determined is the application of the Illi-

968

nois Statute of Limitations. In this connection proof must be received concerning the nature and character of the acts of fraud which the defendants are charged with having committed. If said issue is resolved favorably to the plaintiffs, the next issue to be determined is whether the acts of fraud were such acts as to bring them under the Securities and Exchange Act of 1934.

The defendants motion for summary judgment is overruled and plaintiffs are allowed thirty days in which to amend their complaint. An order in accord therewith has this day been entered.